WITHERELL, A MINOR, ET, PLAINTIFF, v. PARKER, DEFENDANT.

Common Pleas Court, Franklin County.

No. 216557. Decided March 10, 1964.

*Mr. Thomas Bopeley*, for plaintiff.
*Messrs. Sebastian, Fais & Durst*, for defendant.

SATER, J. This case comes presently before us on defendant's motion for summary judgment. Aside from what appears in the petition and answer, the operative facts to be considered are found in the respective depositions of plaintiff and defendant. Defendant's brief states the operative facts so succinctly and objectively that we adopt them:

"Since, for the purpose of this motion, the Court must construe the evidence in favor of the plaintiff, we will present only the disputed evidence which most favors the plaintiff.

"The depositions of the defendant and of the plaintiff have been filed in this case. There is no dispute over the fact that the plaintiff and defendant had returned from a drive-in movie and had dropped off another couple at the girl's house. Then the defendant drove up to his brother's house which was in the neighborhood. His brother was asleep so he turned around and drove back to the house where he had dropped off the other couple. In so returning, the defendant meant to make a left-hand turn onto Norwood Street but by mistake he turned one street too soon and found himself on Medina. Medina Street turned out to be a dead end street with some poles set in the ground to prevent traffic from going into the field at the end of the street. These poles were about three feet high.

"From this position, the defendant could see the house where he wanted to be. The plaintiff told him to turn around and go back but the defendant laughed and drove onto the field. The plaintiff again told the defendant to go back. The field was covered with weeds and was apparently just uneven ground overgrown with weeds. The defendant was going less than five miles per hour and when he had gotten two-thirds or three-fourth of the way across the field he struck a pole or post which was hidden in the weeds. Neither the plaintiff or defendant saw the post. The accident happened at night and the defendant had his headlights operating. The house where the defendant wanted to go was about 50-70 yards from the end of Medina.

"These are the facts most favorable to the plaintiff. The defendant denies that the plaintiff requested him to turn around or said anything at all when he entered the field. The post that was struck was not as high as the weeds which were about 12-18 inches above the ground.

"As a matter of law, what did the defendant do? He drove through a field, at a slow rate of speed, although the plaintiff asked him to turn around and go back. Does this constitute willful and wanton misconduct?"

Obviously, this entire case turns on Ohio's guest statute which, roughly stated, relieves the driver of a motor vehicle

from liability for injury to a passenger in the vehicle driven by him except for willful and wanton misconduct (or negligence, in common parlance). Our present problem is even narrower: Do the facts quoted above justify this Court in presently sustaining defendant's motion? The answer must be in the negative. *Petroff* v. *Commercial Motor Freight, Inc.*, 12 Ohio Opinions (2d), 484, 82 Ohio Law Abs., 433.

This is apparently a case of factual first impression in Ohio where the preponderating number of "guest statute" cases have turned on extremely high rate of speed, severe state of intoxication, weaving through traffic, gross disregard of weather conditions, and the like. But all guest statute cases, like all ordinary negligence cases, turn on their own facts. Factual novelty does not exculpate.

Was defendant here motivated by a misdirected sense of adventure, by a bent for derring-do, by an inclination to "curtain dance" for his girl-friend guest, or by a desire to hurry through an otherwise pleasant evening and, so, get home betimes? Or was it something else? We do not know. We know only from his deposition that he recognized that his proper course of action when he reached the dead-end was "of turning around like I should have" instead of going around the dead-end blocks and continuing across the open field as the crow flies. Tragically, he was not a crow; he was earth-bound.

A moderate rate of speed here is undoubtedly the equivalent of a far greater rate of speed on a highway. Then add the ingredient that this accident was in the night season not far from midnight. Then further add the facts that he could see only what the headlights of his car revealed, and over a bumpy field covered with grass and weeds of varying heights, what he could see would be far less than on an open street or highway. Then add the fact that passenger automobiles are not made for cross-country travel. And finally, add the fact that he was a trespasser from the moment he left the end of the street. Too much is left for speculation.

Even when two public ways are available, a traveler having two reasonably convenient ways for his journey, one of which is dangerous and the other not, imposes on himself burdens of care not otherwise found. No reason is shown here why defendant should not have confined his driving to the

way already made available for vehicular traffic. It was no fault of defendant that he did not encounter, for example, a grass-filled ditch, an abandoned cistern or a partly-filled sewer or basement. Conceivably, this case may end in a directed verdict but even so, we must presently follow the *Petroff case, supra.*

Motion denied.